Patricia A. COOK, Mother and Next Friend of David Cook, Brian Cook and Jonathan Cook, Minors, Plaintiffs,

v.

Joe STARLING, the Benevolent Protectorate Order of Elks Lodge, No. 702, a Non-For-Profit Corporation, Defendants.

No. 83 C 5857.

United States District Court,
N.D. Illinois, E.D.

Jan. 9, 1985.

George E. Faber, Faber & Buehler, Elgin, Ill., for plaintiffs.

Robert M. Burke, Heineke, Burke & Healy, John Mack, Holstein & Mack, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Patricia Cook ("Cook") filed this diversity action on August 23, 1983, against Joe Starling ("Starling") under the Illinois Dram Shop Act, Ill.Rev., ch. 43, § 135 (1983) ("the Act"). The complaint is based upon a cause of action which accrued on August 24, 1982. On February 7, 1984, Starling moved for summary judgment, asserting that Starling was not a proper defendant under the Act.[1] Instead of re-

---

1. The Act asserts in relevant part:

    Every person who is injured in person or property by any intoxicated person, has a right of action in his or her own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person. Any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit there-

in the sale of any alcoholic liquors that have caused the intoxication of any person, shall be liable, severally or jointly, with the person selling or giving the liquors.

Starling argued in his summary judgment motion that he did not operate or "own" the tavern in his individual capacity, and thus was not amenable to suit under the Act. This motion became moot when Cook dropped Starling from the action. In his current memorandum, Starling reasserts his summary judgment motion as an alternative to the arguments raised below.

sponding to the motion, Cook obtained leave of court to amend her complaint, and did so on February 28, 1984, substituting the "Bledsoe-Starling Corporation" ("the corporation") for Starling as a named defendant. On July 11, 1984, we granted a motion to dismiss filed by the corporation. 594 F.Supp. 177. We held that the naming of the corporation in the amended complaint did not "relate back" under Fed.R. Civ.P. 15(c) to the original complaint; thus, the one-year statute of limitations of the Act[2] barred the action. Cook amended the complaint again on July 17, 1984, renaming Starling as an individual defendant. Now before the Court is Starling's "motion for judgment on the pleadings." *See* Fed.R. Civ.P. 12(c). For the reasons stated below, we deny this motion.

■ Starling premises his motion on two theories. First, he asserts that when Cook first amended her complaint and dropped Starling as a defendant, she in effect voluntarily dismissed Starling under Fed.R. Civ.P. 41(a)(2).[3] Starling argues that this dismissal was with prejudice, barring Cook from renaming Starling. As we noted in an earlier opinion in this case, we agree that dropping Starling amounted to a voluntary dismissal, but the dismissal was without prejudice. *See Cook v. Starling*, No. 83 C 5857, slip op. at 3, n. 2 (N.D.Ill. November 5, 1984).

■ Starling's second theory is that Cook's renaming of Starling does not "relate back" to the original complaint accord-

ing to Fed.R.Civ.P. 15(c). Rule 15(c) governs the situation where a plaintiff adds a party to an amended complaint after the relevant statute of limitations has run. An obvious prerequisite to applying Rule 15(c) is a determination of what the statute of limitations is and when it expired. In our opinion of November 5, 1984, we stated that Rule 15(c) might not apply at all to this case because it was possible that the state statute of limitations had not in fact expired. We directed the parties to brief the issue, which they have done.

Because this is a diversity suit, the *"Erie doctrine"* commands that we apply the same statute of limitations that an Illinois state court would apply. *E.g., Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Cook filed this suit against Starling one day before the expiration of the Dram Shop Act's one-year statute of limitations. In addition to this one-year statute, however, Illinois courts apply a general "savings statute," which provides that an action which is voluntarily dismissed may be refiled within one year of the dismissal, even if the relevant limitations period has run in the interim. Ill.Rev. Stat. ch. 110, § 13–217 (1983).[4] We think that an Illinois court, applying this statute, would hold that Cook was free to rename Starling in the second amended complaint. Cook took her "voluntary dismissal" on February 28, 1984. She renamed Starling on July 17, 1984, well within a year of the dismissal. Under the plain terms of § 13–

Because that motion had become moot, Starling should refile it if he wishes to renew it. *See* Fed.R.Civ.P. 7(b)(1); Local Rules 12, 13. He may do so, with a supporting memorandum, on or before February 15, 1985. We will set a briefing schedule if Starling renews the motion.

2. The limitations provision of the Act states, "[e]very action hereunder shall be barred unless commenced within one year next after the cause of action accrued."

3. Rule 41(a)(2) states:
   (2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as

the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

4. Section 13–217 states:
   Reversal or dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if ... the action is voluntarily dismissed by the plaintiff ... then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater ... after the action is voluntarily dismissed by the plaintiff.

217, the suit was timely, even though "the time limitation for bringing such action expire[d] during the pendency of such action."

Starling argues that § 13–217 does not apply to suits filed under the Dram Shop Act. He contends that the limitations period of the Act is not a "statute of limitations" which curtails the remedy but not the right; rather, it is a limitation on a statutorily created cause of action, which extinguishes both the right and the remedy. *See Demchuk v. Duplancich*, 92 Ill.2d 1, 64 Ill.Dec. 560, 440 N.E.2d 112 (1982). Hence, concludes Starling, the right extinguished with the running of the statute, and it cannot be tolled. We disagree. Unlike *Demchuk*, this suit was originally filed on time. There is no issue of tolling the original limitations date. Section 13–217 in plain terms applies to "actions specified in Article XIII of this Act or any other act ... where the time for commencing an action is limited." This language contains no exception and expressly includes causes of action created by statute. No Illinois cases have excluded the Dram Shop Act from the embrace of § 13–217. Moreover, Illinois courts have applied general "relation-back" rules to suits under the Dram Shop Act. *Cody v. Ladurini*, 109 Ill.App.2d 116, 249 N.E.2d 315 (1969); *see also People ex rel. L'Minggio v. Parker*, 65 Ill.App.3d 296, 22 Ill.Dec. 293, 382 N.E.2d 613 (1978) (predecessor to § 13–217 applies to suits filed under Paternity Act, even though limitation period in that Act conditions the right and the remedy). We therefore hold that an Illinois court would apply § 13–217 to this suit.

Starling argues in the alternative that the *Erie* doctrine does not command us to apply § 13–217 because it is a rule of "procedure," part of the Illinois Code of Civil Procedure. The Supreme Court long ago warned against such facile uses of the labels "procedure" or "substance" in resolving *Erie* issues:

> [T]he question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the state, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely does it significantly affect the result of a litigation for a federal court to disregard a law of a state that would be controlling in an action upon the same claim by the same parties in a State court?

*York*, 326 U.S. at 109, 65 S.Ct. at 1470. Section 13–217, although part of Illinois' Code of Civil "Procedure," is part of the chapter titled "Limitations," and is part and parcel of Illinois' total statute of limitations scheme, which includes the one in the Dram Shop Act. *York* makes clear that statutes of limitations are "substantive" for *Erie* purposes. We think that as a federal court sitting in diversity in Illinois, we must apply the whole of Illinois' limitations scheme, not just a part. *See Covel v. Safetech, Inc.*, 90 F.R.D. 427, 429 (D.Mass. 1981). To do otherwise would clash with the above language from *York*.

In analogous contexts, when federal courts have borrowed a state's statute of limitations, they have also borrowed its "acccoutrements," that is, the various tolling provisions which attach to the statute. *See Speight v. Miller*, 437 F.2d 781, 782–83 (7th Cir.1971) (applying Illinois' borrowing statute in a diversity suit to borrow both Tennessee statute of limitations and its tolling provisions), *cert. denied*, 404 U.S. 827, 92 S.Ct. 60, 30 L.Ed.2d 55 (1971); *Hollins v. Yellow Freight Systems, Inc.*, 590 F.Supp. 1023, 1026–27 (N.D.Ill.1984) (same); *Norman v. Kal*, 550 F.Supp. 736, 740–41 (N.D.Ill.1982) (same); *Williams v. United States*, 353 F.Supp. 1226, 1231 (E.D.La. 1973) (borrowing state's statute of limitations and its tolling provisions in a suit under 42 U.S.C. § 1983); *U.S. ex rel. Sabella v. Newsday*, 315 F.Supp. 333, 335–36 (E.D.N.Y.1970) (same). While none of these cases are exactly in point, they do all support the practice of borrowing the whole of a state's limitations scheme, not just a part.

In sum, we conclude that under § 13–217 Cook renamed Starling in a timely manner and that that section controls. Since the limitations period had not really "expired," we need not consider whether Rule 15(c) would have allowed Cook to rename Starling. As such, *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), is not relevant. Under *Hanna*, where a Federal Rule conflicts with a state rule of "procedure," the Federal Rule will in general control. *See* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 4504 (1982) at 42. But here Rule 15(c) does not conflict with § 13–217. The terms of Rule 15(c) are unrelated to the impact of voluntary dismissals limitations periods. The rule could come into play only after we had applied the state's full limitations scheme. Conversely, § 13–217 is not really a "relation-back" rule in the nature of Rule 15(c). Absent a direct conflict, then, the state's "substantive" limitations policy should govern. *See Rumberg v. Weber Aircraft Corp.*, 424 F.Supp. 294, 298–300 (C.D.Cal.1976). Were Rule 15(c) to conflict directly with Illinois' relation-back rules, this might be a different case.[5]

For the above reasons, we deny Starling's motion for judgment on the pleadings. It is so ordered.

---

**5.** Even if an application of Rule 15(c) would bar the action, a conflicting but more *permissive* state relation-back rule would probably nevertheless control. "[T]he presumption in favor of applying Rule 15(c) is less strong when … state law is more permissive concerning the addition of defendants than it is when state law is more restrictive." 19 Wright, Miller & Cooper, § 4509 at 155; *see Covel*, 90 F.R.D. at 431–32.

Thus, to the extent that § 13–217 might be considered a "relation-back" rule, it would apparently apply if it mandated a conflicting but more liberal result than Rule 15(c). *See* Wright, Miller & Cooper, *supra* at 159–60 ("If, by chance the state courts should remain open, it is difficult to understand why diversity jurisdiction should be refused by a federal court").